**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**DANIEL HICKLIN, JR.,**

Plaintiff,

v.

**ROBERT A. MCDONALD, SECRETARY,
U.S. DEPARTMENT OF VETERANS
AFFAIRS,**

Defendant.

Case No. 1:14-cv-01569-CRC

<u>**MEMORANDUM OPINION**</u>

Plaintiff Daniel Hicklin Jr., worked at the Department of Veteran Affairs for slightly

more than a year.  After several confrontations with his supervisor—including alleged threats of

violence by Hicklin—the Department proposed removing him from federal service.  In turn,

Hicklin filed a formal complaint with the Equal Employment Opportunity ("EEO") office

alleging discrimination based on his race (African-American) and religion (Christian).  The

Department ultimately carried out the proposed removal and Hicklin amended his EEO

complaint to include his termination as a further example of discrimination.  Yet, in this suit,

Hicklin alleges that his termination constituted retaliation—in addition to race and religious

discrimination—despite never having raised this allegation in the EEO process.  As a result, the

Department moves to dismiss Hicklin's retaliation claim for failure to exhaust administrative

remedies.  Because Hicklin did not allege retaliation in his administrative complaint and the

claim is not reasonably related to his prior discrimination allegations, the Court will grant the

motion.

## I.     Background

From May 2013 to April 2014, Hicklin worked at the Department of Veterans Affairs ("VA") as an Information Technology Specialist under the supervision of Chief Information Officer Darryl McGraw.  Am. Compl. ¶¶ 6–7.  Hicklin and McGraw did not get along.  The acrimony began in Hicklin's first month on the job, when McGraw reprimanded him for not acquiring an identification badge.  Id.  Hicklin and McGraw had another confrontation in August 2013 when Hicklin had trouble locating a customer's work station and McGraw admonished him for not knowing or looking up the customer's department acronym.  Mot. to Dismiss Ex. A at 81.  Hicklin later received a letter of counseling from McGraw and met with him to discuss its contents, leading to another heated exchange.  Id. Ex. A at 2–4.

Five days later, one of Hicklin's colleagues overheard him say "payday is coming" in reference to McGraw, which the colleague "perceived . . . to be a veiled threat as he had heard previous comments, made by [Hicklin], which led him to believe that [he] may have violent tendencies."  Id. Ex. G at 10.  During a human resources investigation into Hicklin's conduct, several other coworkers also reported that he had used "threatening language towards Mr. McGraw with the intent to inflict bodily harm."  Id. at 7.  Several days later, Hicklin overheard that McGraw planned on having police remove him from the office for threatening conduct, id. at 3, prompting him to report to an EEO counselor that he was being harassed by McGraw based on his race and religion, Am. Compl. ¶ 8.  Two months later, the VA proposed to terminate Hicklin for making repeated threats of violence in the workplace toward McGraw.  Id. ¶ 10; Mot. to Dismiss Ex. C.  In response, Hicklin filed a formal complaint alleging the proposed removal was "the product of race and religious discrimination."  Am. Compl. ¶ 11.  Hicklin indicated on the intake form that the bases for the complaint were "Race-Black" and "Religion-Christian."

Mot. to Dismiss Ex. A at 1.  In April 2014, the VA carried out the proposed removal and Hicklin

was terminated from federal service.  Am. Compl. ¶ 14.  Hicklin then amended his

administrative complaint for race and religious discrimination to include the actual termination,

contending that he never made the alleged threats.  Mot. to Dismiss Ex. C.  The Department's

EEO office informed Hicklin's attorney that it had accepted the amendment regarding the

termination as part of the "overall harassment claim" and instructed Hicklin and his attorney to

notify the EEO officer within seven days if the additional claim was "improperly formulated,

incomplete, or incorrect[.]"  Id. Ex. D at 3.  They did not do so.  Hicklin initially filed a suit

consisting of one count of retaliation in September 2014, alleging that the VA fired him for filing

a formal complaint.  Id. ¶¶ 44, 47.  After the VA's motion to dismiss was fully briefed, the Court

in April 2015 granted Hicklin leave to file an amended complaint adding hostile work

environment, racial discrimination, and religious discrimination claims.  Am. Compl. ¶¶ 41–51.

The content of Hicklin's retaliation claim remained unchanged in the amended complaint, and

thus the Court indicated that it would treat the VA's motion as a partial motion to dismiss.

     Although he does not reference it in his amended complaint, Hicklin mentions in his

motion to supplement his opposition to the VA's motion to dismiss that he also appealed his

removal to the Merit Systems Protection Board ("MSPB") in May 2014.  Pl.'s Supplement to

Opp'n to Mot. to Dismiss at 3 & ex. 2 at 1.  He attached to that motion to supplement the VA

EEO's "Final Agency Decision," which explains that the EEO dismissed the "claims relating to

the removal actions" because Hicklin appealed his removal to the MSPB, id. ex. 1 at 2, and a

single page from his MSPB appeal form where he contends he was terminated "because he

complained about discrimination based on race and religion to an EEO Representative on

September 20, 2013," id. ex. 2 at 1.  Hicklin has not provided any additional documentation—such as the full appeal submission or a final order—regarding his MSPB appeal.

## II.      Standard of Review

A motion to dismiss for failure to exhaust administrative remedies is properly addressed under Federal Rule of Civil Procedure 12(b)(6).  See Marcelus. Corr. Corp. of American/Correctional Treatment Facility, 540 F. Supp. 2d 231, 234-35 (D.D.C. 2008), and defendants bear the burden of pleading and proving untimely exhaustion, Brown v. District of Columbia, 251 F. Supp. 2d 152, 161 (D.D.C. 2003).  "If the defendant meets this burden, then the burden shifts, and the plaintiff must plead and prove facts supporting equitable avoidance of the defense." Proctor v. District of Columbia, No. CV 13-00985, 2014 WL 6676232, at *11 (D.D.C. Nov. 25, 2014) (citing Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997); Terveer v. Billington, 34 F.Supp.3d 114 (D.D.C. Mar. 31, 2014)) (quotation marks and alterations omitted).  For a complaint to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must furnish "facts to state a claim of relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  In assessing a complaint for failure to state a claim, a court must "treat the complaint's factual allegations as true and must grant plaintiff the benefit of all reasonable inferences from the facts alleged." Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006).

The court generally cannot consider matters outside the pleadings in deciding a Rule 12(b)(6) motion, but it may consider "documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies

even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." Ward v D.C. Dep't of Youth Rehab. Servs., 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (citations omitted). Because Hicklin's complaint refers to his EEO complaint and the resulting investigation, compl. ¶¶ 8–14, the Court will consider the associated documents produced in the VA's motion to dismiss without converting the motion into one for summary judgment. But because Hicklin's amended complaint neither references his MSPB appeal nor attaches any documents associated with it, the Court will not consider it.

## III.    Analysis

"Complainants must timely exhaust administrative remedies before bringing their Title VII retaliation claims to court." Bowden, 106 F.3d at 437 (citing Brown v. GSA, 425 U.S. 920, 832-33 (1976)). Courts in this district disagree, however, about whether plaintiffs must exhaust allegations of discrimination and retaliation that are related to prior administrative charges in light of the Supreme Court's rejection of the continuing violation doctrine. National Railroad Passenger Corporation v. Morgan 536 U.S. 101, 114 (2002) (holding courts may not consider discrete discriminatory and retaliatory acts that fell outside the time period for filing Title VII claims even if those acts were sufficiently related to an act that was timely filed). Most courts in this district have interpreted Morgan to require exhaustion for all discrete acts of retaliation after an administrative charge is filed, "regardless of any relationship that exists between those discrete claims and any others." Rashad v. Wash. Metro. Area Transit. Auth., 945 F. Supp. 2d 152, 165-66 (D.D.C. 2013) (collecting cases from courts in this circuit on the implications of Morgan and adopting the majority view that discrete acts of retaliation require discrete charges and exhaustion to provide an opportunity for investigation); see also Mount v. Johnson, 36 F. Supp. 3d 74, 84-85 (D.D.C. 2014) (summarizing the majority and minority interpretations).

These cases reason that requiring exhaustion of each discrete claim most faithfully reflects

Morgan and the purpose of the exhaustion doctrine, namely, "to give the agency notice of a

claim and the opportunity to handle it internally so that only claims plaintiff has diligently

pursued will survive."  Romero-Ostolaza v. Ridge, 370 F. Supp. 2d 139, 149 (D.D.C. 2005)

(citing Velikonja v. Mueller, 315 F. Supp. 2d 66, 74 (D.D.C. 2004)).

By contrast, a minority of this district's courts have continued to apply the D.C. Circuit's

pre-Morgan "like or reasonable related" test articulated in Park v. Howard University, which

permits unexhausted discrimination and retaliation claims to proceed as long as the claims are

"like or reasonably related to the allegations of [a prior administrative] charge."[1]  71 F.3d 904,

907 (D.C. Cir. 1995); see also Marcelus, 540 F. Supp. 2d at 236 (applying Park test but finding

unexhausted claim not reasonably related to prior administrative charge); Contreras v. Ridge,

305 F. Supp. 2d 126, 135 (D.D.C. 2005) (stating exhaustion not required for discrete acts of

retaliation as long as Park test satisfied).  Courts adhering to this view reason that "the

exhaustion doctrine was not intended to become a massive procedural roadblock to access to the

courts" and "where the ends of administrative exhaustion have been served by the pursuit of

administrative remedies with regard to the subsequent acts, separate initiation of administrative

---

[1]  Hicklin cites Hazel v. Wash. Metro Area Transit Auth., No. 02-1375 (RWR), 2006 U.S. LEXIS 89139, at 25 (D.D.C. Nov. 30, 2006) and Wedow v. City of Kansas City, Mo., 442 F.3d 661, 673-74 (8th Cir. 2006), for the proposition that separate exhaustion is not required for acts of retaliation occurring after the filing of an administrative complaint that "were of a like kind to the retaliatory acts alleged in the EEOC charge, which were specified to be of an ongoing and continuing nature."  Opp'n at 4.  But the cases applying Hazel/Wedow typically involve circumstances where the acts underpinning the claim of retaliation have been omitted from the administrative charge altogether.  See Pierson v. Wash. Metro. Area Transit Auth., 821 F. Supp. 2d 360, 365-67 (D.D.C. 2011) (applying Wedow when plaintiff alleged retaliation for her termination in the administrative charge, but complaint included two additional acts of retaliation based on her non-rehire and harassment); Thomas v. Vilsak, 718 F. Supp. 2d 106, 120-21 (D.D.C. 2010) (applying Wedow for discrete acts omitted from the plaintiff's administrative complaint, but raised for the first time in federal court). Here, the acts underpinning Hicklin's claim of retaliation relate closely to those identified in his initial administrative complaint.

exhaustion for post-complaint conduct is not required." <u>Velikonja</u>, 315 F. Supp. 2d at 74 (internal citations omitted).

The D.C. Circuit has declined to resolve the split.  <u>See</u> <u>Payne v. Salazar</u>, 619 F.3d 56, 65 (D.C. Cir. 2010) (determining there was no need to decide whether <u>Morgan</u> overtook the <u>Park</u> line of cases because the plaintiff failed the reasonable relation test).  This Court has applied the <u>Park</u> standard in other cases.  <u>See</u> <u>Scott v. Dist. Hosp. Partners, L.P.</u>, No. 13–cv–00600, 2014 WL 3702855 at * 3–4 (D.D.C. 2014).  It need not choose one interpretation over the other here, however, as Hicklin's claim fails under both approaches: he did not allege and exhaust a retaliation charge administratively as required under the majority view, and his retaliation claim is not "like or reasonably related" to the charges in his administrative complaint, as required under the minority view.

A.  <u>Evaluating Hicklin's Claim Under the Majority Interpretation</u>

In order for Hicklin's retaliation claim to survive under the majority interpretation, he "must demonstrate that he exhausted his administrative remedies with respect to each discrete act" of retaliation he alleges.  <u>Romero-Ostolaza v. Ridge</u>, 370 F. Supp. 2d at 149.  Here, he alleges a single act of retaliation in the form of his termination.  To properly state a claim of retaliation, plaintiffs "must demonstrate that (1) they engaged in statutorily protected activity, (2) the employer took an adverse employment action against them, and (3) that a causal connection existed between the two."  <u>Hussain v. Nicholson</u>, 435 F.3d 359, 366 (D.C. Cir. 2006).  While a plaintiff need not use precise "magic words" to make out a proper charge, he must sufficiently "alert the EEOC and the charged employer with the nature of the alleged wrongdoing." <u>Maryland v. Sodexho, Inc.</u>, 474 F. Supp. 2d 160, 162 (D.D.C. 2007).  In other words, "vague or circumscribed" charges do not satisfy the exhaustion requirement because allowing them to do

so would "circumvent the EEOC's investigatory and conciliatory role, . . . deprive the charged

party of notice of the charge," Marshall v. Federal Express Corp., 130 F.3d 1095, 1098 (D.C.

Cir. 1997), and prevent the agency from correcting its own mistake and compiling a record for

judicial review, Boniface v. United States Dep't of Homeland Sec., 613 F.3d 282, 290 (D.C. Cir.

2010).

      Several recent cases from this district show that Hicklin has failed to plead facts that

could demonstrate that he exhausted his administrative remedies for his retaliation claim.  In

Robinson-Reeder v. American Council on Education, for example, the plaintiff alleged that she

was retaliated against when she was placed on probation after she complained about a co-worker

being hired because of personal connections within the agency.  532 F. Supp. 2d 6, 10-11

(D.D.C. 2008).  The court dismissed the claim because, as with Hicklin's claim here, the plaintiff

did not check the retaliation box on the charge form and the charge's factual allegations, which

focused on racial discrimination, failed to "provide the slightest hint that plaintiff may have

viewed the probation notice as a retaliatory act."  Id. at 13.  The court reached a similar

conclusion in Nyunt v. Tomlinson, where it found that the plaintiff failed to articulate a claim of

retaliation in an EEO complaint that described only alleged discrimination based on age and

national origin, 543 F. Supp. 2d 25, 35 (D.D.C. 2008).  The Court came to the same result in

Carter v. Washington Post as well, holding that the plaintiff had failed to exhaust his race

discrimination and retaliation claims because he "neither checked the appropriate box nor

described his claims in the EEOC charge form."  No. 05-1712, 2006 U.S. Dist. Lexis 29424, at

*11-14 (D.D.C. May 15, 2006).  As in these cases, Hicklin failed to give any notice that he was

alleging retaliation in his EEO complaint; rather, he clearly indicated race and religion as the

only bases for the adverse action he suffered and furnished a narrative focusing solely on his

allegedly hostile work environment without mentioning retaliation or reprisal.  <u>See</u> Am. Compl. ¶ 11 ("Plaintiff filed a formal complaint with the Equal Employment Opportunity Commission ["EEOC"] alleging that Defendant's proposed removal action was the product of race and religious discrimination."); Mot. to Dismiss Ex. A.  Further, Hicklin never corrected the EEO office after it informed him that it had accepted the amendment regarding the termination as part of the "overall harassment claim" and instructed him to notify them if the amendment was "improper1y formulated, incomplete, or incorrect[.]"  <u>Id.</u> Ex. D at 3.  Consequently, the Court concludes that Hicklin failed to exhaust administrative remedies under the majority interpretation of <u>Morgan</u> because his administrative complaint did not allege retaliation for the discrete act of his termination.

    B. <u>Evaluating Hicklin's Claim Under the Minority Interpretation</u>

    Under the minority interpretation of <u>Morgan</u>, a lawsuit following an EEO charge is "limited in scope to claims that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'"  <u>Park</u>, 71 F.3d at 907 (quoting <u>Cheek v. W. & S. Life Ins. Co.</u>, 31 F.3d 497, 500 (7th Cir. 1994)).  Any other theories not contained in the EEO charge are barred.  <u>Marcelus</u>, 540 F. Supp. 2d at 236.  Notably, courts that adhere to this view have held that "[a]t a minimum, the Title VII claims must arise from 'the administrative investigation that can reasonably be expected to follow the charge of discrimination,'" <u>Park</u>, 71 F3d at 907 (quoting <u>Chisholm v. United States Postal Service</u>, 665 F.2d 482, 491 (4th Cir. 1981)), but "[c]laims of [the] 'ideologically distinct categories' of discrimination and retaliation . . . are not 'related' simply because they [arise] out of the same incident."  <u>Bell v. Donley</u>, 724 F. Supp. 2d 1, 9 (D.D.C. 2010).

Several analogous cases from this district show that Hicklin's retaliation claim is not "like or reasonably related" to his race and religious discrimination claims in light of the fact that his amended complaint lacks any indication that the allegedly unlawful conduct described was motivated by Hicklin's prior EEO charge. In <u>Marcelus v. Corrections Corporation of America/Correctional Treatment Facility</u>, for example, the plaintiff filed an EEOC charge alleging age and national origin discrimination, but included a claim of retaliation based on his termination in the subsequent civil law suit. 540 F. Supp. 2d at 234. In dismissing the retaliation claim for failure to exhaust administrative remedies, the court reasoned that "absent an indication of [a retaliation] theory, plaintiff's retaliation claim here is not 'like or reasonably related' to the allegations in his EEOC Charge." <u>Id.</u> at 236. Likewise, in <u>Brown v. District of Columbia</u>, the court applied the <u>Park</u> test and dismissed plaintiff's gender discrimination and retaliation claims for failure to exhaust because her administrative charge only addressed race and disability discrimination and did not address retaliation for protected activity whatsoever. 251 F. Supp. 2d at 162. Hicklin's retaliation claim fails the "like or reasonably related test" for the same reasons, as he has not pled any facts that could show how the claim would "reasonably follow from an administrative investigation" into the race and religious discrimination allegations in his EEO complaint. Accordingly, Hicklin's retaliation claim would fail under the minority interpretation of <u>Morgan</u> as well.

**IV.    Conclusion**

For the reasons set forth above, the Court will grant the VA's motion to dismiss Count I (Retaliation). The Court will issue an order consistent with this memorandum opinion.

Date:   __June 8, 2015_____                    _____
                                                      CHRISTOPHER R. COOPER
                                                      United States District Judge